## AFFIDAVIT OF PATRICIA NELSON, SPECIAL AGENT
## INTERNAL REVENUE SERVICE-CRIMINAL INVESTIGATION

---

### AFFIDAVIT IN SUPPORT OF CIVIL SEIZURE WARRANTS

---

I, Patricia Nelson, a Special Agent with the Internal Revenue Service-Criminal Investigation (IRS-CI), (hereinafter referred to as "your affiant") being duly sworn, states as follows:

This Affidavit is submitted in application for civil seizure warrants for the following subject bank accounts and safe deposit box:

1) All funds in account number 08902-68271 held in the name of Hernan Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

2) All funds in account number 08901-76648 held in the name of Hernan Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

3) All funds in accounts attached to debit card no. 4217661495920456 in name of Hernan Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

4) All funds in account number 04257-17507 held in the name of Yadira Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

5) All funds in accounts attached to debit card no. 4217642498671049 in name of Yadira Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

6) All funds in accounts attached to debit card no. 4217642476833264 in name of Yadira Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

7) Contents of safe deposit box in the name of Yadira Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California, which utilizes Key #X4680.

## AUTHORITY

This Affidavit is submitted in support of applications for seizure warrants authorizing the United States to seize eight bank accounts and one safe deposit box located in the Central District of California (Lynwood, California).  The Court has authority to issue these seizure warrants pursuant to Title 18, United States Code, Section 981(b)(3), also incorporated by Title 21, United States Code, Section 881(b).  Section 981(b)(3) provides that a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action may be filed under Title 28, United States Code, Section 1355(b), **"and may be executed in any district in which the property is found."**  18 U.S.C. § 981(b)(3).  In turn, Title 28, United States Code, section 1355(b) provides that a forfeiture action may be brought in any district where the underlying acts or omissions occurred upon which the forfeiture based.

## GENERAL BACKGROUND

Your affiant is a Special Agent with the Internal Revenue Service Criminal Investigation (IRS-CI) and has been employed in this capacity since August of 1998. Currently, I am assigned to the Drug Enforcement Administration (DEA) and am working the financial aspects of narcotics related cases. I have completed the Special Agent Basic Training Academy in Glynco, Georgia, which included training on criminal tax and money laundering types of investigations. In addition, I have worked many cases involving tax fraud and financial crimes, including violations of Title 26, and Title 18 U.S.C. §§ 1956 and 1957.

Your affiant has further participated in several investigations involving offenses for distribution of, possession with intent to distribute, and conspiracy to distribute controlled substances.

2

Pursuant to my training and experience in the investigation of financial crimes and related offenses, your affiant knows that violators use and maintain records, documents, and files (which are written, printed, magnetic or electronic) that are evidence of criminal acts and reflect the receipt and disposition of illegally obtained proceeds or income. Your affiant has been involved in the execution of numerous search warrants that resulted in the seizure of financial records, evidence of money laundering, including cash and other personal and real property related to criminal activity.

Individuals involved in this type of illegal activity (i.e., money laundering and narcotics trafficking) often use aliases, fictitious names, or false identification cards to avoid detection. These individuals also place assets in names other than their own to avoid identification of these assets by law enforcement agencies. Even though these assets are in other people's(s) names, these individuals continue to use these assets and exercise dominion and control over them. In addition, these individuals will use "business fronts" to attempt to conceal or disguise their identities and their illegal activities from law enforcement.

Individuals involved in illegal activities maintain books, receipts, notes, ledgers, and other papers to conduct their illegal activities, although these documents may be in code. It is common for individuals involved in illegal activities, to hide proceeds, including, but not limited to, the following: currency, financial instruments, precious metals, jewelry, vehicles, and other items of value. These individuals will keep assets and records of their illegal activities in secure locations, on their person, and within their containers, residences, offices, garages, storage buildings, and safe deposit boxes for ready access, and also to conceal such items from law enforcement authorities.

Individuals involved in illegal activities (i.e., money laundering and narcotics trafficking) amass large proceeds from these activities, and that these individuals attempt to legitimize these proceeds. I know that to accomplish these goals, these individuals utilize, including, but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

### Overview of Investigation

1.     On Tuesday, January 24, 2012, HERNAN GASTELUM, JORGE GUIJARRO, AGUSTIN AGUIRRE-RAMIREZ, ISAIAS RETERIA-PEREZ and 11 other individuals (collectively referred to as the AGUIRRE-RAMIREZ DRUG TRAFFICKING ORGANIZATION or DTO) were indicted by a Federal Grand Jury in the District of Colorado on multiple counts related to the distribution of cocaine and money laundering. This indictment was the culmination of a multi-jurisdictional investigation of the drug trafficking activities of the AGUIRRE-RAMIREZ DTO which included surveillance, court authorized wiretaps, vehicle stops, and other investigative techniques. According to information developed throughout the investigation, the AGUIRRE-RAMIREZ DTO received the vast majority of illegal drugs (cocaine) from sources of supply located in the Los Angeles, California area.

2.     Investigators have learned that the drugs associated with this organization are smuggled from Mexico into California and then from California to Colorado in hidden compartments in vehicles. Once the drugs are sold in Colorado (and elsewhere) the proceeds are returned to the sources of supply in the Los Angeles, CA area. The money is secreted in the same hidden compartments in the vehicles which carried the illegal drugs prior to their sale.

3.     During the investigation, law enforcement officers have determined that GASTELUM, who lives in California, was a source of illegal drugs for AGUIRRE-RAMIREZ, who lives in Colorado.  GASTELUM, coordinated with GUIJARRO, who also lives in California, to get illegal narcotics and then transport the narcotics in vehicles to AGUIRRE-RAMIREZ, who would distribute the illegal narcotics in the Denver, Colorado area.  AGUIRRE-RAMIREZ would then send the proceeds of the illegal narcotics back to California, often times in the same vehicles which transported the narcotics to Colorado.

4.     The following is not an exhaustive enumeration of the facts that I have learned during the course of this investigation, but are the facts which I believe are sufficient to establish probable cause for the requested seizure warrants.  References to other law enforcement personnel's participation in this case may be referred to generally as "agents" or "investigators." I have reviewed reports of investigation prepared by other agents and investigators pertaining to this investigation.  All of the facts set forth below are true and correct to the best of my knowledge:

## Probable Cause

5.     On Tuesday, January 24, 2012, fifteen individuals (AGUSTIN AGUIRRE-RAMIREZ, ISAIAS RENTERIA-PEREZ, HERNAN GASTELUM, JORGE GUIJARRO, JESUS GOMEZ-VADIVIA, MANUEL LUNA, LUIS REYNOSO-RODRIGUEZ, JAIME QUINTERO-GIL, FNU LNU (PARIENTE), PEDRO SANCHEZ, JIM GONZALES, JESUS ALFONSO URIAS-BOJORQUEZ, JESUS SALAZAR-ORDONEZ, RAMONA ROMAN, and AGUSTIN SOLORIO-MENDEZ) were indicted by a Federal Grand Jury in the District of Colorado on various charges related to the trafficking of narcotics. The indictment was ordered restricted, but as of this date is unrestricted. The indictment alleges violations of the following:

1) conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), and 841(b)(1)(A)(ii)(II); 2) money laundering and conspiracy to launder money offenses in violation of Title 18, United States Code, section 1956; 3) distribution and possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and aiding and abetting the same, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(B)(ii)(II) and  Title 18, United States Code, Section 2; and 4) other violations of the United States Code related to drug trafficking, including use of a communication device to facilitate drug trafficking.

6.      On July 13, 2011, DEA Special Agent (SA) Scott Nickerson of the Los Angeles, California DEA Division Office, Group 4 provided information to Denver OCDETF Strikeforce agents regarding a drug trafficking organization that was being investigated by SA Nickerson that appeared to have members in the Denver, Colorado area.  According to information provided by SA Nickerson, DEA SAs and TFOs in Los Angeles, California initiated an investigation into a narcotics trafficking organization in the Los Angeles, California area in February, 2011.  According to SA Nickerson, the organization under investigation is comprised of multiple individuals involved in the large scale distribution of cocaine and methamphetamine (multi kilogram and multi pound quantities) and the remittance of large amounts of narcotics proceeds. To date, the investigation in the Los Angeles area has resulted in the seizure of hundreds of kilograms of cocaine, multiple pounds of methamphetamine, and millions of dollars in US currency which is believed to be drug proceeds.

7.      The Los Angeles based investigation has utilized multiple State of California Court Orders authorizing the interception of wire and electronic communications on various

telephones utilized by members of the organization. SA Nickerson obtained a State of California Court Order on July 7, 2011, authorizing the interception of wire and electronic communications on a telephone being used by HERNAN GASTELUM (identified in SA Nickerson's affidavit as JOHN DOE #8 and herein referred to as "California TT 27").

### Initiation of the Investigation of the AGUSTIN AGUIRRE-RAMIREZ DTO

8.     On July 8, 2011, communications were intercepted between HERNAN GASTELUM and AGUSTIN AGUIRRE-RAMIREZ on California TT27. The two men were believed to be discussing a shipment of narcotics that AGUSTIN AGUIRRE-RAMIREZ received from HERNAN GASTELUM.  This discussion included the narcotics weight, quality, ability to be resold, as well as the procedure to repackage and return a portion of the unwanted (low quality) drugs.  Los Angeles, California investigators intercepted communications on California TT 27 for approximately one day before the telephone was no longer used by HERNAN GASTELUM.

9.     The Los Angeles, California Court Order authorizing the interception of wire and electronic communications on California TT 27 also authorized the use of third party GPS "pings" including the telephone being used by AGUSTIN AGUIRRE-RAMIREZ, 303-350-6894.  SA Nickerson initiated the third party "pings" on this telephone which provided the location of the telephone on a regular basis.  The data from the "pings" on 303-350-6894 indicated the telephone (and presumably the user of the telephone) was in the Denver, Colorado area.

10.     Utilizing the data provided from the DEA investigation in Los Angeles as well as information from other ongoing investigations in the Denver metro area, Denver agents initiated an investigation into the drug distribution activities of the AGUIRRE-RAMIREZ DTO.

11.     Since the investigation in Denver, CO was initiated in July 2011, investigators from the Denver DEA OCDETF Strikeforce have sought and obtained orders authorizing the interception of wire communications of eleven telephones used by the AGUIRRE-RAMIREZ DTO. All of the orders were issued by the Federal Court in the District of Colorado. Most of the intercepted calls were in the Spanish language. Excerpts of these calls which are in quotations in this affidavit are quotes of the English summaries of these intercepted calls prepared by certified linguists.

### Recovery of One Kilogram of Cocaine

12.     On August 25, 2011, a traffic stop was conducted on a person who, based on court authorized intercepted communications and surveillance, was suspected of receiving cocaine from AGUSTIN AGUIRRE-RAMIREZ. On that date, there were several intercepted communications between AGUSTIN AGUIRRE-RAMIREZ and an unidentified male customer coordinating the purchase of one kilogram of cocaine from AGUIRRE-RAMIREZ. That evening, surveillance observed a vehicle used by AGUSTIN AGUIRRE-RAMIREZ parked outside of the apartment building at 6550 South Dayton, an address previously identified as being associated with the DTO. Approximately 5 minutes later, the customer called AGUSTIN AGUIRRE-RAMIREZ and said they (the customer and his friend from Greeley) had just arrived. Surveillance did not observe the parties enter the building; however, approximately 10 minutes later, surveillance observed 2 Hispanic males walk from the building and to a 2004 GMC Envoy registered in Colorado to Franky Rodriguez at 111 14th Avenue #1B, Greeley, Colorado. Surveillance followed the GMC Envoy to an apartment complex in Aurora, Colorado where the passenger was dropped off. The GMC Envoy drove north towards Greeley, Colorado and was stopped by the Colorado State Patrol for a traffic violation in LaSalle, Colorado. The driver of

the vehicle, Jesus Salazar-Ordonez was contacted and a search of the vehicle was completed. Troopers located a brick of cocaine (approximate weight is 1 kilogram) concealed in the vehicle.

13.     Investigators believe the narcotics located in the vehicle were obtained from AGUSTIN AGUIRRE-RAMIREZ at 6550 South Dayton and the male dropped off in Aurora was the person who called AGUIRRE-RAMIREZ to set up the deal. Agents believe that Jesus Salazar-Ordonez was the customer's friend from Greeley, Colorado who was the intended recipient of the 1 kilogram of cocaine.

14.     Two days prior to this seizure, AGUIRRE-RAMIREZ traveled to Los Angeles and back to Denver in the same day. In the morning on August 23, 2011, AGUSTIN AGUIRRE-RAMIREZ traveled by airplane from Denver, Colorado to Los Angeles, California. While in the Los Angeles area, AGUSTIN AGUIRRE-RAMIREZ went to 3570 Martin Luther King Jr. Boulevard, Lynwood, CA, the LYNWOOD MARISCOS. This location is identified in the Anaheim Police Department Surveillance Report as "Jalisco Mexican Restaurant"; however, this location is known to be "Mariscos Los Dorados" which is owned by Yadira Gastelum, who is believed to be HERNAN GASTELUM's wife.

15.     According to the surveillance report, two men were seen leaving the restaurant together and spoke with each other for a time in the parking lot. The men got into separate vehicles (one got into a Lexus SUV with unreadable paper license plates and the other got into a white Mercedes SUV with CA license plate 6NWP487 which registers to IAN Holdings of Tulsa, OK). Surveillance followed the Mercedes as it drove in a manner consistent with attempting to see if it was being followed (quick lane changes, entering parking lots without going into the stores, parking so as to view the street, exiting the freeway and immediately

getting back on the freeway, etc). The vehicle was followed for a time before it returned to National Car Rental near the Los Angeles International Airport.

16.     Based on the GPS data and intercepted call data it appears that the surveillance team was following AGUSTIN AGUIRRE-RAMIREZ. According to the GPS data on his telephone, AGUSTIN AGUIRRE-RAMIREZ returned to the airport and flew to Denver, Colorado the evening of August 23, 2011. It appears that AGUSTIN AGUIRRE-RAMIREZ flew to Los Angeles the morning of August 23, 2011, rented a car and drove to the LYNWOOD MARISCOS where he met with GASTELUM. In the parking lot, Denver agents believe surveillance observed AGUSTIN AGUIRRE-RAMIREZ and HERNAN GASTELUM leave the restaurant, talk in the parking lot for a period of time and get into their respective vehicles (surveillance did not positively identify either man).

### Recovery of $339,370 US Currency Associated With the CO Stash House

17.     During the week of November 28, 2011, there were multiple court authorized wire intercepts which suggested AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ were in contact with the California source of supply (HERNAN GASTELUM) and that AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ were expecting a load of cocaine from this source of supply. (Denver agents believe based on the totality of the circumstances learned throughout the investigation that the identity of the source of supply is HERNAN GASTELUM and that AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ refer to HERNAN GASTELUM as "NALGON" or "NALGAS" on the intercepted communications, which according to Spanish language interpreters means "big butt" or "fat ass"). Through intercepted communications, investigators were able to determine that the load of narcotics was expected to arrive in Denver on Friday December 2, 2011. Investigators learned

in later intercepted calls on TARGET TELEPHONE ELEVEN that the vehicle most likely contained 20 kilograms of cocaine.

18.     On December 2, 2011, law enforcement observed a Volkswagen Touareg with California license plate 6TQP267 driving eastbound on Interstate 70 near the Silverthorne exit. The vehicle was stopped near Georgetown, Colorado on Interstate 70, for traffic violations.  The driver was identified by his California driver's license as JIM GONZALES, DOB November 17, 1974.  JIM GONZALES told the Colorado State Trooper he was coming to Colorado from California to look for work and that he was borrowing the car to see if he wanted to purchase it from the owner, who was identified by JIM GONZALES and registration information as Jesus Alberto Valenzuela.  JIM GONZALES gave the trooper permission to search the car. The car was searched and JIM GONZALES and the vehicle were ultimately released from the stop after nothing illegal was found in the passenger compartment of the vehicle.

19.     Physical surveillance was sent to 101 South Nome Street, Aurora, Colorado (anticipating the load vehicle would be driven to this location for the drugs to be offloaded) and observed the Volkswagen Touareg with California license plate, 6TQP267, arrive.  According to intercepted communications, the load of cocaine had arrived and AGUSTIN AGUIRRE-RAMIREZ was preparing to distribute it.

20.     The following day (December 3, 2011) intercepted communications indicated the AGUIRRE-RAMIREZ (DTO) spent the day distributing the cocaine. According to intercepted communications on December 3, 2011, the organization had finished selling the drugs.  In the afternoon, AGUSTIN AGUIRRE-RAMIREZ returned to 101 South Nome Street, Aurora, Colorado to (investigators believe) deliver the proceeds of the sale of the drugs to be loaded into the car and returned to the source of supply in California.  Intercepted calls indicated that the

11

load car would return to California and that the source of supply intended to send a second load of cocaine within a few days.

21.     In the evening hours of Saturday, December 3, 2011, physical surveillance observed the Volkswagen Touareg leave 101 South Nome Street, Aurora, Colorado followed for a time by a white Jeep Cherokee associated with ISAIAS RENTERIA-PEREZ. The VW Touareg was followed by investigators as it drove out of the Denver area west bound on Interstate 70.

22.     DEA investigators in Denver coordinated with DEA investigators in St. George, Utah to have the vehicle stopped.   At approximately 7:11 a.m., the VW Touareg was stopped near St. George, Utah for a traffic violation.  Ultimately, a State of Utah search warrant was obtained for the vehicle after agents in Utah developed independent probable cause supporting the warrant. Pursuant to the search warrant, investigators located $339,370 in US currency packaged in 12 separate bundles hidden in compartments located in the VW Touareg.  Based on this finding (the US currency), the intercepted communications  and physical surveillance, investigators believe the VW Touareg may have transported 20 kilograms of cocaine in hidden compartments from the source of supply (HERNAN GASTELUM) located in the Los Angeles, California area to Denver. The drugs were offloaded at 101 South Nome Street, Aurora, Colorado and distributed.  Once distributed, AGUSTIN AGUIRRE-RAMIREZ (and others in his Organization) collected the proceeds and returned them to 101 South Nome Street, Aurora, Colorado where ISAIAS RENTERIA-PEREZ and his associates loaded the US currency into the hidden compartments that originally held the cocaine.

23.     It should be noted that following his arrest on February 9, 2012, pursuant to the warrant on the previously described federal indictment, JIM GONZALES made a post-Miranda

statement indicating that he did not believe the vehicle contained controlled substances when he was stopped in Colorado. Further, GONZALES told law enforcement that he did not know the vehicle contained U.S. currency when he was stopped in Utah.

**Surveillance of Load Vehicle at CO Stash House on December 28, 2011 and Stop and Arrest of JESUS URIAS-BOJORQUEZ with 10 Kilograms (approximate weight) of Cocaine on December 30, 2011**

24.     Coordination between the Denver investigators and the Los Angeles investigators, including information from intercepted communications, pieced together the following chain of events:

25.     Los Angeles DEA Group 4 has identified a source of supply who is the leader of a narcotics trafficking cell in Southern California (as this investigation is ongoing, I will simply refer to this person as the "DEA 4 source of supply" rather than by name). The investigation has revealed that the DEA 4 source of supply coordinates the narcotics and narcotics proceeds trafficking activities of this trafficking cell utilizing two associates who physically transport the narcotics and narcotics proceeds. During the course of this investigation, intercepted calls of multiple telephones used by the DEA 4 source of supply have resulted in the seizure of approximately 58 kilograms of cocaine and approximately $539,336 in United States currency in suspected drug proceeds.

26.     In the morning on December 28, 2011, a white Dodge truck with Nevada license plate 987XSX (registered in Nevada to JESUS URIAS-BOJORQUEZ at 1012 N Jones Blvd, apartment D, Las Vegas, Nevada 89108) arrived at 101 South Nome Street, Aurora, Colorado and parked in the garage. Based on previous incidents during which circumstances and observed activity at the stash house were similar, agents believed that a load of narcotics arrived in the truck for distribution by the AGUIRRE-RAMIREZ DTO.

13

27.     Late that afternoon, the white truck left the garage at 101 South Nome Street and followed the white Jeep Cherokee with license plate 189VZN (this vehicle is commonly driven by ISAIAS RENTERIA-PEREZ and his associates) out of the neighborhood.  At approximately 6:40 p.m. the Dodge truck left the Denver area and, according to surveillance, traveled to the Los Angeles, California area.  Agents in Colorado coordinated with the DEA in Los Angeles, California who conducted physical surveillance in the Los Angeles area on the truck shortly after it arrived in the Los Angeles area.

28.     On December 29, 2011, at approximately 3:30 p.m., the white Dodge was in the vicinity of a parking lot near the intersection of Martin Luther King Boulevard and Imperial in Lynwood, CA. This location appears to be a strip mall and a Carl's Jr. Restaurant, and is only a few blocks away from the LYNWOOD MARISCOS.  Based on court authorized telephone GPS data, the telephone utilized by JORGE GUIJARRO was within one mile of the location of the white truck which had just arrived from Aurora, Colorado.  In light of this information, agents in Los Angeles and Denver believe that JORGE GUIJARRO (a/k/a JORGE BOJORQUEZ, a/k/a TARTA) most likely met with the driver of the truck later identified as JESUS URIAS-BOJORQUEZ.

29.     At approximately 4:20 p.m., during an intercepted communication between the DEA 4 source of supply and JORGE GUIJARRO, the DEA 4 source of supply said he/she was told to call him (GUIJARRO) to find out what was going on.  JORGE GUIJARRO said he was going to call the boss and find out "how much they had completed."  JORGE GUIJARRO said he would call him/her (the DEA 4 source of supply) back.  Approximately two minutes later, the DEA 4 source of supply received an incoming call from JORGE GUIJARRO, which was intercepted pursuant to a court authorized order. During the call, JORGE GUIJARRO said the boss said yes, but he still had to "verify the amount." JORGE GUIJARRO said he asked if they (DEA 4 source of supply's

14

associates) could come by around 6:00 or 7:00, because they were kind of...(unfinished statement). The DEA 4 source of supply agreed. JORGE GUIJARRO said to tell the guy to do it as late as possible and to  go to the back of the place he went the other time.  The DEA 4 source of supply said okay, and asked if the same place as last time.  JORGE GUIJARRO said yes.

      30.     At approximately 4:37 p.m., on that date, surveillance was established at the GUIJARRO RESIDENCE.  Surveillance observed JORGE GUIJARRO arrive in the area and walk towards 769 Rose Avenue, Long Beach, California, carrying a box approximately one foot in length and 4X6 inches in width.  JORGE GUIJARRO was seen looking into parked vehicles, which surveillance believed was counter-surveillance measures used by JORGE GUIJARRO to identify the presence of law enforcement in the area. JORGE GUIJARRO then walked toward the building at 769 Rose Avenue, Long Beach, CA and out of sight of surveillance.

      31.     On December 29, 2011, at approximately 6:11 p.m. the white Dodge was in the area behind the LYNWOOD MARISCOS for approximately 30 minutes.  This is a restaurant owned by Yadira Gastelum, who is HERNAN GASTELUM's wife.  The truck then went to an address in Compton, CA before driving east towards Colorado.

      32.     By approximately 7:30 a.m. on December 30, 2011 the Dodge truck was traveling north on Interstate 15, north of Las Vegas, Nevada.  Denver agents contacted the DEA in St. George, Utah to coordinate a traffic stop of the truck.  At approximately noon on December 30, 2011, the Dodge truck was stopped near Richfield, Utah by the Utah Highway Patrol for a traffic violation. State Troopers contacted the driver and identified him as JESUS URIAS-BOJORQUEZ by his California Driver's license.  The State Troopers received consent to search the vehicle and during the subsequent search located a hidden compartment under a seat.  The compartment was found to contain ten bricks of cocaine, weighing approximately one kilogram each.  Subsequent information from DEA in St. George, Utah indicated that latent fingerprints

recovered from the packaging on the cocaine found in JESUS URIAS-BOJORQUEZ' truck,
matched those of JORGE GUIJARRO.

33.   Additionally, on December 29, 2011, at approximately 10:00 p.m., a conversation
between the DEA 4 source of supply and JORGE GUIJARRO was intercepted in which the DEA 4
source of supply asked what the total was given to Compadre (believed to be a worker for the DEA 4
source of supply who collected money from GUIJARRO). JORGE GUIJARRO said "1-95" for the
10. JORGE GUIJARRO said he had the rest, but when he called the boss, the boss said not until
tomorrow because he (the boss) was at the lights, at the casinos. The DEA 4 source of supply said
okay. The DEA 4 source of supply asked if there was something from  the previous one. JORGE
GUIJARRO asked if 4-5 was still pending from the other one.  The DEA 4 source of supply said yes.
JORGE GUIJARRO said to jot it down, and they would do the same.

34.   DEA received information from a proffer interview conducted on May 23, 2011, that
HERNAN GASTELUM is a source of supply of cocaine and methamphetamine in the Los Angeles,
CA area.  According to the information collected in the interview, HERNAN GASTELUM had two
restaurants which are used to launder narcotics proceeds which are identified in the report as "Los
Dorados" (located at 8111 Rosecrans Avenue, Paramount, CA and 3570 Martin Luther King Jr.
Boulevard, Lynwood, CA).  Additionally, the interviewee said he/she received methamphetamine
from HERNAN GASTELUM at the 8111 Rosecrans, Paramount CA location (the PARAMOUNT
MARISCOS) and knew of others who received multiple pounds of methamphetamine on a weekly
basis from HERNAN GASTELUM at the other restaurant location (the LYNWOOD MARISCOS).
Specifically that HERNAN GASTELUM would arrange the transfer of the narcotics and the kitchen
staff at the LYNWOOD MARISCOS and PARAMOUNT MARISCOS would actually put the drugs
into the car of the person receiving them.

35.     This information was provided as part of a proffer interview by a person facing federal drug trafficking charges in Reno, Nevada, with the hopes of receiving consideration in the form of a reduced sentence.  Agents were able to verify and corroborate much of the information provided by the individual and deem the information reliable.  The interviewee has a criminal history including numerous deportations and arrests for assault on an officer with a weapon (1998), possession of a controlled substance for sale (2006), a parole violation (2008), as well as the pending federal charges for which he/she provided the above information.

36.     Based on all of the above information, including conversations with agents familiar with the Los Angeles investigation, Denver agents believe that the calls on December 29, 2011, between the DEA 4 source of supply and GUIJARRO were regarding a narcotics proceeds transaction.  As is implied in the events described above, Denver and DEA Group 4 agents believe that JORGE GUIJARRO met with JESUS URIAS-BOJORQUEZ prior to the calls (in the vicinity of Century Boulevard and Imperial Highway, Lynwood, California) and collected narcotics proceeds that had been transported from Colorado. DEA Group 4 agents who reviewed the intercepted communications believe JORGE GUIJARRO indicated that he was going to contact his boss (believed to be HERNAN GASTELUM) to determine how much currency had been collected, "how much they had completed."

37.     Based on the intercepted calls and associated surveillance described above, Denver and DEA Group 4 agents believe that after meeting with JESUS URIAS-BOJORQUEZ, JORGE GUIJARRO was carrying a box containing narcotics proceeds provided by JESUS URIAS-BOJORQUEZ into 769 Rose Avenue, Long Beach, CA.  Further, Denver and DEA Group 4 agents believe that this box contained a portion of the narcotics proceeds which would be provided to the DEA 4 source of supply's associates at a later time.

38.     As to the call later in the evening on December 29, 2011, between the DEA 4 source of supply and GUIJARRO, it is the belief of Denver and DEA Group 4 agents who are familiar with this investigation and have reviewed the above described calls that the DEA 4 source of supply asked for the amount of narcotics proceeds which GUIJARRO had delivered to his (the DEA 4 source of supply's) associate. JORGE GUIJARRO indicated that they had provided approximately $195,000 in narcotics proceeds for ten kilograms of cocaine ("1-95 for the 10). Based on this information, Denver and DEA Group 4 agents believe the DEA 4 source of supply provided cocaine to JORGE GUIJARRO and HERNAN GASTELUM at a price of $19,500 per kilogram. According to DEA Group 4 agents familiar with drug trafficking in Los Angeles, CA, this price is consistent with the price of cocaine (per kilogram) in Southern California.

39.     Finally, agents believe that when the white Dodge was parked behind the LYNWOOD MARISCOS for almost 30 minutes, ten kilograms of cocaine (seized on the following day in Utah) were being loaded into the white Dodge at the direction of HERNAN GASTELUM.

40.     A review of phone toll records show multiple contacts between numbers used by JESUS URIAS-BOJORQUEZ, JORGE GUIJARRO, HERNAN GASTELUM, and ISAIAS RENTERIA-PEREZ between December 26, 2011 and December 30, 2011.

## HERNAN GASTELUM

41.     As stated earlier, HERNAN GASTELUM was indicted on Tuesday, January 24, 2012 by a Federal Grand Jury in the District of Colorado on charges related to trafficking 5 kilograms or more of cocaine and money laundering. HERNAN GASTELUM has a criminal history that includes a conviction in the State of California in 2006 for Possession/Purchase a Controlled Substance and was sentenced to 9 years in the California Department of Corrections. The conviction is a result of HERNAN GASTELUM being found in possession of

approximately 58 kilograms of cocaine, $589,359.00 in US currency and a hand gun. The contraband was found in a house along with another individual.

### Surveillance Related to HERNAN GASTELUM

42.     Since August 31, 2011 (through January 31, 2012), agents have conducted numerous surveillance operations at the GASTELUM RESIDENCE.  During some of these surveillance operations agents have witnessed HERNAN GASTELUM come and go from the residence as well as a female, believed to be YADIRA GASTELUM, come and go from the residence.

43.     In addition to witnessing HERNAN GASTELUM coming and going from his residence, surveillance has seen HERNAN GASTELUM come and go from both the LYNWOOD MARISCOS and the PARAMOUNT MARISCOS.  Surveillance has seen HERNAN GASTELUM driving multiple different vehicles – some registered to him or to YADIRA GASTELUM and some with unreadable paper (temporary) license plates.  The vehicles have been seen parked in the driveway at the GASTELUM RESIDENCE and both the LYNWOOD MARISCOS and the PARAMOUNT MARISCOS.

44.     On approximately January 12, 2012, ISAIAS RENTERIA-PEREZ drove from the Denver, Colorado area to the Los Angeles, California area in the white Jeep which has been previously described.  Upon his arrival in the Los Angeles area, surveillance observed ISAIAS RENTERIA-PEREZ at a gas station talking on a cellular phone.  A short time later a Toyota Camry arrived at the gas station and the two vehicles traveled to a nearby motel.  At the motel, ISAIAS RENTERIA-PEREZ got into the Toyota and the vehicle left the area.  Approximately 2 hours later surveillance at the GASTELUM RESIDENCE observed HERNAN GASTELUM driving a red BMW X6 with unreadable paper license plates on Everest Street.  The passenger in

the BMW appeared to be ISAIAS RENTERIA-PEREZ.  Over the next several days, surveillance observed ISAIAS RENTERIA-PEREZ visit both the LYNWOOD MARISCOS and the PARAMOUNT MARISCOS.

45.     On January 31, 2012, a surveillance team observed HERNAN GASTELUM get into a red BMW X6 which was parked in the driveway of the GASTELUM RESIDENCE and leave the area. The BMW had unreadable "dealer" license plates.

46.     Public and commercially available records relating to HERNAN GASTELUM, the LYNWOOD MARISCOS and the PARAMOUNT MARISCOS were searched in late January, 2012 which contained the following information:

- HERNAN GASTELUM is related to YADIRA (ROJAS) GASTELUM and both are residents of 8449 Everest Street, Downey, CA, the GASTELUM RESIDENCE. (December 2011)

- HERNAN GASTELUM is associated with address 3570 Martin Luther King Jr. Boulevard, Lynwood, CA (the LYNWOOD MARISCOS). (May 2011)

- Both the LYNWOOD MARISCOS and the PARAMOUNT MARISCOS are owned by YADIRA GASTELUM. (September 2011 and January 2011)

47.     The following information was obtained from the California Department of Motor Vehicles:

- HERNAN GASTELUM has a California driver's license number D3923919 (issued August 9, 2010 and expires January 22, 2016) and lists his address as 3570 Martin Luther King Jr. Boulevard, Lynwood, CA, (the LYNWOOD MARISCOS).

- HERNAN GASTELUM has a Jeep Cherokee (CA license 6PKH382) registered to him at address 8449 Everest Street, Downey, CA, ( the GASTELUM RESIDENCE).

- YADIRA GASTELUM has a yellow truck (CA license 7C08593) registered to her at address 3570 M L King Jr Blvd, Lynwood, CA, (the LYNWOOD MARISCOS).

- HERNAN GASTELUM has a Toyota truck (CA license 51016A1) registered to him at address 3570 M L King Jr Blvd, Lynwood, CA, (the LYNWOOD MARISCOS).

48.     Each of the vehicles described have been observed by surveillance at the GASTELUM RESIDENCE, the LYNWOOD MARISCOS and/or the PARAMOUNT MARISCOS.

### EXECUTION OF SEARCH WARRANTS IN THE DISTRICT OF COLORADO

On February 8, 2012, federal search warrants were obtained in the United States District Court for the District of Colorado for the search of three residences, one business, and one vehicle all associated with this drug trafficking organization. Case Nos. 12-sw-5104-BNB, 12-sw-5105-BNB, 12-sw-5108-BNB, 12-sw-5109-BNB, and 12-sw-5110-BNB. These warrants were executed in the District of Colorado on February 9, 2012.

### EXECUTION OF SEARCH WARRANT IN THE CENTRAL DISTRICT OF CALIFORNIA -- GASTELUM RESIDENCE

On February 8, 2012, the United States District Court for the District of Central California issued a search warrant authorizing the search of Hernan and Yadira Gastelum's residence, located at 8449 Everest Street, Downey, California.  This warrant was executed on February 9, 2012.  During the search, law enforcement officers found approximately $80,000.00 to $100,000.00 in cash loosely bundled in different denominations.  The cash was found in a pink shopping bag in a back bedroom.  A drug canine positively alerted to this currency.  (Yadira later denied any knowledge of this cash, though it was found in a spare bedroom containing both men's and women's clothing.)  Also found in the home was a small amount of a suspected controlled substance in a bathroom.  Located at the residence was a red 2010 BMW X6M.

After his arrest on February 9, 2012, and after receiving Miranda warnings, Hernan admitted that he coordinated approximately six multi kilo shipments of cocaine to Colorado and made approximately $6000 per shipment. According to Hernan, each shipment contained between six and ten kilograms of cocaine. Hernan admitted that he directed Guijarro as to how much money to provide the source of supply as payment for narcotics on or about December 29, 2011. Based on intercepted communications, the amount Hernan is referring to was $195,000. Hernan admitted that he bought cocaine for $20,000 per kilo and sold it for $23,000 per kilo. He further admitted that he sent eight kilos of cocaine to Colorado for sale in December 2011. Hernan also stated that money which was confiscated on approximately December 4, 2011, was being sent by Aguirre-Ramirez for payment of narcotics. Law enforcement investigation reveals that the amount Hernan is referring to is the $339,370.00 seized on December 4, 2011, in Utah. Hernan claimed that he currently makes all of his money from the Mariscos restaurants. Hernan stated that he has a car payment of $1500 per month on the 2010 BMW X6M which was seized on February 9, 2012, during the search of his residence. Documentation found during the search indicated that Hernan purchased the vehicle for $82,275 in July 2011, through an auto auction in Chicago, Illinois. Officers also discovered a Notice to Pay Rent or Quit, indicating that the Gastelums rented their residence for $2100.00 per month and had not paid rent for the months of January or February 2012. Property documents found at the residence indicated that Hernan owned property in his name in Mexico.

During the search of the Gastelums's residence, officers found various bank statements, deposit and withdrawal receipts pertaining to a number of bank accounts held in the name of Yadira and/or Hernan Gastelum including those that are the subject of this seizure warrant affidavit. Specifically, numerous receipts were found for Bank of America Account No.

XXXX**7507,** in the name of Yadira Gastelum, reflecting withdrawals and deposits, with the most recent activity being a $2,000.00 electronic withdrawal occurring on February 6, 2012, with a remaining balance in this account of $39,607.42.  Receipts pertaining to Bank of America Account No. XXXX**8271,** held in the name of Hernan Gastelum, reflected a remaining balance in this account of $9,139.00 as of November 14, 2011.  Receipts and debit cards were also found linking the Gastelums to other Bank of America bank accounts and to debit card numbers that are possibly associated with additional bank accounts located at Bank of America. Specifically, a bank statement was found indicating that Hernan Gastelum has a bank account at Bank of America, Account No. XXXX6648.  One Bank of America debit card in the name of Hernan Gastelum was seized during the search (No. XXXX0456).  Two Bank of America debit cards in the name of Yadira Gastelum were seized during the search (Nos. XXXX1049 and XXX3264). Balance and account information as to Hernan's additional bank account and pertaining to the three debit cards was not available. During the search, law enforcement officers also located two keys to a safe deposit box held at Bank of America that utilizes Key No. X4680.  The United States is requesting a seizure warrant to open and seize the contents of this safe deposit box, as well as to seize all Bank of America accounts referenced in this affidavit as probable cause exists to believe that these accounts and safety deposit box contain proceeds of Hernan Gastelum's drug trafficking.

Officers found 2011 W-2 forms for Yadira and Hernan Gastelum during the search. These records revealed that Yadira's reported wages were $15,990.00 and Hernan's reported wages were $27,080.00 for the year 2011 from their employment at the Mariscos restaurants, owned by Yadira Gastelum.  This is the only known source of legitimate income for the Gastelums and is clearly insufficient to support the amount of currency seized, bank deposits and

balances, and purchases (i.e., $82,000 BMW) made by them.  Bank records were located pertaining to accounts held at Wells Fargo Bank in Yadira Gastelum's name which appear to be business accounts related to the restaurants operated by Yadira Gastelum.  The United States is not seeking to seize these business accounts.  Officers also located during the search a zippered bag containing approximately $2800 in cash of different denominations and receipts indicating this money was related to the businesses.  Officers did not seize this currency.

Evidence establishes at a minimum Yadira Gastelum's knowledge of the drug trafficking organization.  As stated above, the transfer of narcotics took place at the restaurants owned by Yadira and the kitchen staff at these restaurants actually put the drugs into the car of the person receiving them.  In addition, after his arrest, Hernan Gastelum stated that at one point Guijarro called him while he was in the car with his wife Yadira when he (Hernan) told Guijarro how much money to give to the source to pay for cocaine.  The fact that over $80,000.00 in cash was found in the Gastelums's residence in a pink shopping bag is also strong evidence of Yadira's knowledge of the drug trafficking organization.

## CONCLUSION

The facts set forth above are not all of the facts known to the investigation, but are sufficient to establish probable cause to believe that that the subject bank accounts and safe deposit box represent and contain proceeds traceable to violations of Title 21 U.S.C. § 846 and Title 21 U.S.C. § 841, and the property is thus subject to forfeiture pursuant to Title 21 U.S.C. § 881(a)(6).

Accordingly, your affiant seeks a civil seizure warrant pursuant to Title 21 U.S.C. § 881(b) and 18 U.S.C. § 981(a)(1)(B) for the following property:

1)      All funds in account number 08902-68271 held in the name of Hernan Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

2)   All funds in account number 08901-76648 held in the name of Hernan Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

3)   All funds in accounts attached to debit card no. 4217661495920456 in name of Hernan Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

4)   All funds in account number 04257-17507 held in the name of Yadira Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California

5)   All funds in accounts attached to debit card no. 4217642498671049 in name of Yadira Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

6)   All funds in accounts attached to debit card no. 4217642476833264 in name of Yadira Gastelum at Bank of America, 3505 E. Imperial Hwy, Lynwood, CA

7)   Contents of safe deposit box in the name of Yadira Gastelum, at Bank of America, 3505 E. Imperial Highway, Lynwood, California, which utilizes Key #X4680.


Patricia Nelson, Special Agent
Internal Revenue Service – Criminal Investigation


Subscribed and sworn to before me this __10th__ day of February, 2012.


UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO